IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HOME BUYERS WARRANTY CORPORATION, a Colorado corporation, and NATIONAL HOME INSURANCE COMPANY (A RISK RETENTION GROUP), a Colorado corporation,<br><br>        Petitioners,<br><br>        v.<br><br>JASON JONES, an Individual, and AMANDA JONES,<br><br>        Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 15-mc-324-RGA-MPT<br>)<br>)<br>)<br>)<br>)<br>) |

**REPORT AND RECOMMENDATION**

I.    **INTRODUCTION**

This action arises out of a petition to compel arbitration and stay an action pending in the Superior Court of the State of Delaware ("petition"). The petition alleges, *inter alia*, respondents entered into a sales agreement for the purchase of a new home at 156 Christina Landing in Wilmington ("the property"), which included a warranty that provided for binding arbitration to resolve any disputes arising out of any part of the sales agreement. (D.I. 1 at 4-7.) Petitioners seek an order compelling respondents to arbitrate their claims and an order staying respondents' Superior Court action, along with attorneys' fees and litigation costs. (*Id.* at 8.) Respondents moved to dismiss the

petition (D.I. 5) and petitioners moved to compel arbitration and stay state court proceedings. (D.I. 7.) For the following reasons, the court will deny respondents' motion to dismiss and grant petitioners' motion to compel.

## II. FACTS

The parties to this action are petitioners, Home Buyers Warranty Corporation ("HBW") and National Home Insurance Company (A Risk Retention Group) ("NHIC"), and respondents, Jason and Amanda Jones. Respondents executed a Sales Agreement ("Agreement") with BPG Residential Partners IV, LLC ("seller")[1] on March 31, 2004. (D.I. 10 at 1.) Paragraph three of the Agreement notes attachment of addenda, including a "Sample Limited Warranty Administered by Homebuyers." (D.I. 1-2 at 28.) Paragraph eight of the Agreement provides as follows:

> LIMITED WARRANTY. Seller, a member of HOME BUYERS WARRANTY ("HBW"), has provided to Buyer a sample limited warranty document containing the terms and conditions of a limited warranty to be provided by Seller to Buyer at closing, which Buyer has read and understands (the "Limited Warranty"). The Limited Warranty is intended to be administered by HBW and requires that all disputes which arise under such Limited Warranty be submitted to binding arbitration. Validation of the Limited Warranty by HBW is not guaranteed by HBW, but, rather, is conditioned upon the satisfactory completion of all required inspections, Seller's compliance with all of HBW's enrollment procedures, and Seller remaining a member in good standing of the HBW Limited Warranty Program. Buyer understands and agrees that, if the above Limited Warranty is validated by HBW, it is provided by Seller in lieu of all other warranties, oral agreements, representations and <u>SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED AS TO QUALITY, FITNESS FOR A</u>

---

[1] Petitioners refer to both BPG Residential Partners IV, LLC and BPGS Construction, LLC as "BPGS" and BPG Residential Partners IV, LLC as "BPG Residential." (D.I. 8 at 2, D.I. 10 at 1.) Respondent refers to BPG Residential Partners IV, LLC as "BPG Partners" and BPGS Construction, LLC as "BPG Construction." (D.I. 6 at 1.) In the interest of clarity, the court will refer to BPG Residential Partners IV, LLC as "seller" and to BPGS Construction, LLC as "builder".

> PARTICULAR PURPOSE, MERCHANTABILITY, HABITABILITY, OR OTHERWISE, EXCEPT AS IS EXPRESSLY SET FORTH IN THE LIMITED WARRANTY PROGRAM.  IN ANY EVENT, SELLER SHALL NOT BE LIABLE FOR ANY PERSONAL INJURY OR OTHER CONSEQUENTIAL OR SECONDARY DAMAGES AND/OR LOSSES WHICH MAY ARISE FROM OR OUT OF ANY AND ALL DEFECTS. Buyer understands and agrees the warranty of all appliances and other consumer products installed in the home are those of the manufacturer or supplier only and not Seller and that such warranties will be assigned by Seller to Buyer, effective the date of closing.

(*Id.* at 30) (emphasis in original.)  Paragraph 22 of the Agreement is as follows:

> GOVERNING LAW AND JURISDICTION.  This Sales Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware.  Seller and Buyer agree that jurisdiction over any dispute arising under this Sales Agreement shall be vested exclusively in the courts of the State of Delaware and hereby consent to such jurisdiction.

(*Id.* at 32.)  Respondents initialed each page and signed the Agreement on the "Buyer" line.  (*Id.* at 28-32.)  Sellers also initialed each page and executed the Agreement.  (*Id.*)  On September 21, 2005, respondents and seller signed a "Builder Application for Home Enrollment," to formally apply for the warranty specified in paragraph eight of the Sales Agreement.  (D.I. 8-5 at 2.)  The application states:

> **BUYER'S ACKNOWLEDGMENT AND CONSENT**
> Your builder is applying to enroll your home in the 2-10 HBW® - insured warranty program.  By signing below, you acknowledge that you have read a sample copy of the Warranty Booklet, and CONSENT TO THE TERMS OF THESE DOCUMENTS INCLUDING THE BINDING ARBITRATION PROVISION contained therein.  You further understand that when the warranty is issued on your new home, it is an Express Limited Warranty and that all claims and liabilities are limited to and by the terms and conditions of the Express Limited Warranty as stated in the 2-10 HBW Booklet."

(*Id*)  (emphasis in original).

3

HBW mailed respondents a Certificate of Warranty Coverage and a copy of HBW Limited Warranty Booklet, edition HBW 307 12/15/2004.  (D.I. 10 at 2.)  The Certificate contains an integration clause stating the warranty contract is comprised of the Builder Application for Home Enrollment, the Certificate, and the Home Buyers Limited Warranty Booklet, with no party bound by any other representations or agreements made by any persons.  (D.I. 1-2 at 38.)

The HBW warranty booklet included a broad arbitration clause, stating:

> *Any and all claims, disputes and controversies* by or between the homeowner, the Builder, the Warranty Insurer and/or HBW, or any combination of the foregoing, *arising from or related to this Warranty*, to the subject Home, to any defect in or to the subject Home, or the real property on which the subject Home is situated, or the sale of the subject Home by the Builder, including without limitation, any claim of breach of contract, negligent or intentional misrepresentation or nondisclosure in the inducement, execution or performance of any contract, including this arbitration agreement, and breach of any alleged duty of good faith and fair dealing, *shall be settled by binding arbitration.  Agreeing to arbitration means you are waiving your right to a jury trial.*
> . . .
>
> This arbitration agreement shall be deemed to be a self-executing arbitration agreement.  Any disputes concerning the interpretation or the enforceability of this arbitration agreement, including without limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defenses based upon waiver, estoppel, or laches, shall be decided by the arbitrator.
> . . .
>
> No arbitration proceeding shall involve more than one single-family detached dwelling or more than one multifamily building.

(*Id.* at 45-46) (bold typeface removed) (emphasis added.)

### III.     PROCEDURAL BACKGROUND

On October 15, 2015, respondents filed a class action complaint against BPG

4

Residential Partners IV, LLC, BPGS Construction, LLC, Home Buyers Warranty Corporation, and National Home Insurance Company in the Superior Court for the State of Delaware in and for New Castle County (*Id.* at 2.) Respondents allege breach of contract (Count I), negligent construction (Count II), negligent repair (Count III), breach of warranty (Count IV), bad faith (Count V), promissory estoppel (Count VI), consumer fraud (Count VII), and deceptive trade practices (Count VIII). (*Id.* at 15-23.) Respondents also seek a declaratory judgment establishing the Warranty is a contract of adhesion and its arbitration provision, waivers, disclaimers, and exclusions are ambiguous, unconscionable, and unenforceable (Count IX). (*Id.* at 23-25.)

## IV. PARTIES' CONTENTIONS

Petitioners filed their action in this court, alleging jurisdiction under diversity of citizenship and amount in controversy over $75,000, exclusive of interest and costs. (D.I. 1 at 1, 3.)

Respondents filed a motion to dismiss the petition (D.I. 5) and petitioners moved to compel arbitration and stay an action pending in the State court. (D.I. 7.) Respondents claim they did not agree to the arbitration clause; the arbitration clause is unlawful and unenforceable; and the warranty clause is unconscionable. (D.I. 6 at i.) Petitioners contend respondents agreed to arbitration; the warranty delegates issues of arbitrability to an arbitrator; the arbitration should only include respondents' individual claims; and the court may enter an injunction staying respondents' claims when necessary to carry out an order compelling arbitration. (D.I. 8 at i.)

## V. DISCUSSION

### A. Jurisdiction

This court has jurisdiction under 28 U.S.C. §1332. Petitioners are citizens of Colorado, while respondents are citizens of Pennsylvania. (D.I. 8 at 14.) Respondents question whether petitioners meet the statutory requirement that the amount in controversy exceed $75,000, exclusive of interest and costs. (D.I. 11 at 5.) "[T]he amount in controversy in a petition to compel arbitration or appoint an arbitrator is determined by the underlying cause of action that would be arbitrated." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995). Respondents claim $31,777 in repairs to their home, but also assert fraud, bad faith, and consumer fraud, for which they seek treble damages, among others. (D.I. 1-2 at 25-26.) The claim for treble damages exceeds the statutory threshold.[2] This court, thus, has jurisdiction under § 1332.

### B. Agreement to Arbitrate

"Arbitration is a matter of contract between the parties and a judicial mandate to arbitrate must be predicated upon an agreement to that effect." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980). "If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The Third Circuit has found:

> [W]hen it is apparent, based on the face of the complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to

---

[2] Respondents argue petitioners base jurisdiction on respondents' non-warranty claims, for which there was no agreement to arbitrate. (D.I. 11 at 6.) However, the arbitration provision's broad language, if valid, encompasses all of respondents' claims.

> compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question.  After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013).  "A naked assertion, however, by a party to a contract that it did not intend to be bound by the terms thereof is insufficient to place in issue 'the making of the arbitration agreement' for the purposes of Section 4 of the Federal Arbitration Act."  *Par-Knit Mills*, 636 F.2d at 55.

In *Guidotti*, the plaintiff argued she was not bound by an arbitration clause because she was not provided with the clause at the time of agreement, despite signing an account application indicating she had read a document containing the clause and acknowledged being bound by the document's terms and conditions.  *Guidotti*, 716 F.3d at 768-69.  The application in that case, however, gave no indication that a separate document contained an arbitration clause.  *Id.* at 769.  The plaintiff, in response to the defendant's motion to compel arbitration, produced evidence that the document containing the arbitration clause was not included with her application.  *Id.* at 770.  The Third Circuit found the plaintiff had produced sufficient evidence to permit limited discovery before the district court ruled on the motion using a summary judgment standard.  *Id.* at 780.

In *Par-Knit Mills*, Par-Knit argued it was not party to an arbitration agreement because its signatory to the agreement did not have authority to bind the corporation and its production manager only signed the documents as confirmation of delivery

dates. *Par-Knit Mills*, 636 F.2d at 53. "An unequivocal denial that the agreement had been made, accompanied by supporting affidavits, however, in most cases should be sufficient to require a jury determination on whether there had in fact been a 'meeting of the minds.'" *Id.* at 55. Par-Knit produced sufficient affidavits for the court to question whether an agreement had been made and the court remanded the case for a jury determination. *Id.*

In this case, respondents' argument they never agreed to the arbitration clause fails to rise above a naked assertion. Respondents' affidavit, in response to petitioners' motion to compel, does not support their assertions they were unaware of the existence of the arbitration provision or did not intend to be bound by it.[3] The Agreement, executed by respondents, explicitly states all disputes under the Limited Warranty are to be submitted to binding arbitration, that seller has provided a sample warranty, and respondents have read the sample.[4] (D.I. 1-2 at 30.) Respondents also initialed the

---

[3] Respondents assert by affidavit dated January 19, 2016 (D.I. 11-1) that they did not receive or review a sample warranty before, at, or after settlement, and they first received a copy two months after settlement. A binding arbitration provision, however, first appears in Paragraph 8 of the Sales Agreement. Construing this assertion in the light most favorable to respondents as non-movants, respondents' affidavit does not demonstrate a lack of meeting of the minds as to arbitration and does not create a genuine issue of material fact. *See Kirleis v. Dickie, McCamey, & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) ("[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment. Instead, the affiant must set forth specific facts that reveal a genuine issue of material fact.") (internal citations omitted).

[4] Although paragraph 22 provides jurisdiction over all disputes shall be vested in the state courts of Delaware, it is a general provision regarding dispute resolution, while paragraph 8, mandating arbitration for warranty claims, is a specific provision. "In interpreting the entire agreement, '[s]pecific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one.'" *In re G-I Holdings, Inc.*, 755 F.3d 195, 205 (3d Cir. 2014) (quoting *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954,

first page of the agreement, which notes the attachment and incorporation of the sample limited warranty into the Agreement. (*Id.* at 28.) Respondents further signed a Builder Application for Home Enrollment, which included a clause stating respondents read a sample warranty and agree to be bound by the arbitration provision. (D.I. 8-5 at 2.) Respondents have not responded with sufficient facts to place the agreement to arbitrate in issue. Considering the petition and motion under a Rule 56 standard, the court finds respondents did agree to arbitration.[5]

### C. Delegation of Arbitrability

Petitioners ask the court to delegate issues of arbitrability, namely respondents' unconscionability argument, to the arbitrator. (D.I. 8 at 17.) "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.").

In this case, the HBW 2-10 Warranty clearly delegates issues of arbitrability to the arbitrator.

> "This arbitration agreement shall be deemed to be a self-executing arbitration agreement. Any disputes concerning the interpretation or the enforceability of this arbitration agreement, including, without limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel or laches, shall be decided by the arbitrator."

---

961 (Del.2005)). As this dispute arises out of the warranty, paragraph 8 controls.

[5] Even under the standards of Rule 12, the conclusion would be the same.

(D.I. 1-2 at 45-46). Respondents' argument that the "self-executing" nature of the arbitration clause requires assent independent from the warranty agreement is misplaced. Self-executing agreements are "effective immediately without the need of any type of implementing action." *Self-executing*, BLACK'S LAW DICTIONARY (10th ed. 2014). Thus, no separate action was required to assent to the arbitration clause.

Respondents' cited cases, namely *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221 (3d Cir. 2012) and *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191 (3d Cir. 2010) are factually distinct, since the parties in neither of those cases expressly delegated arbitrability to the arbitrator, as the parties have done here.

Respondents argue there is no such agreement because they did not sign the Warranty and never agreed to or knew the terms of the arbitration clause. (D.I. 11 at 9.) They contend in their affidavit that they were never provided with a sample Warranty when they signed the sales agreement or when they settled on the home. (D.I. 11-1 at 2.) Respondents claim they received the Warranty two months after settlement. (*Id.* at 3.) Thus, the heart of respondents' argument is not that they *never* received the Warranty, but that its receipt was not contemporaneous with signing the Agreement and Warranty Application. Their affidavit only suggests a possible dispute regarding when they received the Warranty, or if they agreed to the Warranty at the time of purchase. The date of formation, however, is not material, so long as conduct shows an agreement has been made. *See* Restatement of Contracts (Second) § 19 (AM. LAW INST. 1981). "An entity's attempt to enforce an agreement that contains an arbitration clause provides clear and unmistakable evidence that the entity regards itself bound by

the arbitration clause." *Nauru Phospate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 167 (5th Cir. 1998).

Respondents' conduct indicates assent to the HBW 2-10 Warranty. They submitted a Notice of Claim form under the Warranty for the property on October 31, 2014. (D.I. 1-3 at 13.) Respondents and their counsel also engaged in conversations with NHIC about the status of their claim. (*Id.* at 15, 16, 49-52, 54, 56-57, 59-61, 63-66, 68-70.) Finally, they initiated a Superior Court action to enforce the terms of the Warranty. Respondents seek the benefits of the warranty; they cannot now disclaim other obligations or procedures related to enforcement. Therefore, the court finds the parties validly agreed to the warranty, including the provisions to arbitrate arbitrability and prohibiting class-wide arbitration. As a result of this finding, this court need not address respondents' other arguments.

## V.     CONCLUSION

For the foregoing reasons, the court finds the agreement to arbitrate all claims, including arbitrability, valid and enforceable, and respondents are bound by their agreement to arbitrate. Respondents' motion to dismiss the petition is denied, and petitioners' motion to compel arbitration and stay an action pending in the Superior Court of the State of Delaware is granted.

**RECOMMENDED DISPOSITION**

Consistent with the findings above,

IT IS RECOMMENDED that

(1) Respondents' motion to dismiss the petition (D.I. 5) be DENIED;

(2) Petitioners' motion to compel arbitration and stay an action pending in the Superior Court of the State of Delaware (D.I. 7) be GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 72 (b)(1), and D. DEL. LR 72.1, any objections to the Report and Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same. Any response shall be limited to ten (10) pages.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under FED. R. CIV. P. 72 dated October 9, 2013, a copy of which is found on the Court's website (www.ded.uscourts.gov.)


Date: May 4, 2016                    /s/ Mary Pat Thynge
                                     United States Magistrate Judge